IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND



| | |
|---|---|
| CANDACE POWELL, et al. | * |
| v. | * Civil No. L 96-794 |
| EDITH B. ERB, etc. | * |
| JAMES COOPER, et al. | * |
| v. | * Civil No. L 96-795 |
| EDITH B. ERB, etc. | * |

## MEMORANDUM OPINION AND ORDER

These consolidated diversity cases seek recovery from the estate of a corporate pilot for the death of one passenger, and the serious injury of another, resulting from the crash of a Piper Aerostar 610P on takeoff from the Pottstown-Limerick Airport in Pennsylvania. The plaintiffs have moved for partial summary judgment on the issue of liability, and the estate of the pilot has responded. The issues have been fully and completely briefed, and no oral argument is needed. Local Rule 105.6, D.Md. The present motions have been referred to me *vice* Judge Legg, who is ill.

An overwhelming number of facts concerning the crash are uncontested. It occurred on March 18, 1994, a snowy day, shortly after the aircraft lifted off from the runway. Prior to takeoff, snow with ice underneath had accumulated on the wings of the aircraft, which was parked on the airport ramp, awaiting the return of the passengers from a business meeting. The experienced professional pilot, Mr. Erb, held the highest FAA pilot certificate (Airline Transport Pilot), which allowed him to fly for remuneration as a commercial pilot. He also held the current Class 2 FAA medical certificate needed to exercise the privileges of commercial pilot.

There is no factual dispute (based on the NTSB accident investigation record made part of the record in this case and admissible under Fed.R.Evid. 803(8)(c)) that Mr. Erb, although he held a Class 2 medical certificate, was not entitled to its issuance under 14 C.F.R. Part 67, Subpart C, due to his having obtained his then-current medical certificate on the basis of false medical history, including unreported serious pathology of the eye, which was disqualifying for a Class 2 medical under 14 C.F.R. section 67.15 (as then in effect), as well as various other unreported conditions and treatment that bore on his fitness for a Class 2 medical. See 14 C.F.R. section 67.403. There is also no question that Mr. Erb was using a drug that is capable of affecting judgment, in apparent violation of 14 C.F.R. section 91.17(a)(3), as the toxicology report post-mortem showed the presence of Valium in his blood.

More to the point, there is no dispute that it was snowing in the area of the airport at the time of departure, and that it had been for some time, with the aircraft having accumulated ice and snow on the upper wing surfaces, and, obviously, on the surfaces of its other horizontal airfoil, *viz.*, the horizontal stabilizer, and its associated control surface, the elevator. It is well-known in aviation that even slight accumulations of ice and snow can have drastic deleterious effects on the performance of any airfoil, because it disrupts the smooth flow of air over it, as noted in the NTSB report. Accordingly, 14 C.F.R. section 91.527(a)(2), although not strictly applicable to this aircraft, as it is not a turbojet or turboprop, nor does it appear to be a "large" aircraft, reflects good operating practice by prohibiting the take off of an aircraft with snow or ice adhering to the wings or stabilizing or control surfaces. It is also

uncontested that the post-crash investigation found no mechanical flaw in the aircraft, it engines, or propellers.

Based on all of the foregoing, plus interviews with witnesses, including the lineboy who attempted, at Mr. Erb's request, to clear the wings of snow and ice, but made no effort to clear the horizontal stabilizer or elevator of the same, and a very experienced pilot from a nearby airport who attested to the heavy accumulation of ice and snow on his aircraft at the same time as the Aerostar was parked on the Pottstown-Limerick ramp, there can be no genuine dispute of material that the crash was the fault of Mr. Erb under the law of Pennsylvania, which is applicable under Maryland's *lex locus* choice-of-law rule in tort cases, binding on this Court under the *Erie-Klaxton* doctrine.

When a properly-supported summary judgment motion is made, as here, the opponent must bring forth admissible evidence which, were the case at the directed verdict stage, would support a reasonable fact-finder in finding for her by the appropriate proof standard. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). This, the defendant has failed to do. In fact, the defendant's principal opposition to the present motion is based on alleged inconsistencies in statements by the lineboy as to the extent of icy patches remaining on a wing of the aircraft and the extent of his communications with Mr. Erb concerning them. At no point does the defendant advance any evidence that generates a genuine dispute of material fact as to the medical condition of Mr. Erb, especially as regards the effects of Valium on his judgment as attested to by Dr. DeJohn of the FAA, nor does the defendant show that any attempt at all was made to remove ice

3

or snow from the horizontal stabilizer or elevator. The fact that the lineboy might have made slightly differing responses to the numerous persons who interrogated him post-crash does not generate a material dispute of fact, given the overwhelming evidence that Mr. Erb failed to act as a normally prudent pilot under all the circumstances, as he was bound to do consistent with his duty and ultimate responsibility for the safe conduct of the flight under 14 C.F.R. section 91.3(a), as pilot-in-command, which was the proximate cause of the crash.

The defendant's arguments concerning Pennsylvania's comparative negligence doctrine are beside the point, given that, despite the long pendency of this case, there has not been any third-party complaint filed against other possible defendants, such as the Aviation Medical Examiner who allegedly issued Mr. Erb his Class 2 medical with knowledge of falsified or suppressed medical history, or the lineboy, or the fixed-base operator who employed him. Thus, any question of possible comparative negligence is not in the case before this Court, and, based on the case that is before it, the Court comes to the inescapable conclusion that the plaintiffs' motion for partial summary judgment against the estate of pilot Erb must be GRANTED.

SO ORDERED, this 28th day of December, 1999.

_____
Frederic N. Smalkin
United States District Judge